UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **EXXONMOBIL GLOBAL SERVICES COMPANY, EXXONMOBIL CORPORATION, AND EXXONMOBIL RESEARCH AND ENGINEERING COMPANY,** *Plaintiffs/Counter-Defendants* | § § § § § § § | |
| **v.** | § § | |
| **GENSYM CORPORATION and VERSATA ENTERPRISES, INC.,** *Defendants,* | § § § | **CASE NO.: 1:12-CV-00442-SS** |
| **GENSYM CORPORATION** *Counter Plaintiff/Third-Party Plaintiff* | § § § § | |
| **v.** | § § | |
| **INTELLIGENT LABORATORY SOLUTIONS, INC.** *Third-Party Defendant* | § § § § | |

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs ExxonMobil Global Services Company, Exxon Mobil Corporation, and ExxonMobil Research and Engineering Company ("EMRE"), (collectively, "ExxonMobil"), file this Motion For Partial Summary Judgment against Defendants Gensym Corporation ("Gensym") and Versata Enterprises, Inc. ("Versata") and in support thereof would respectfully show the Court as follows:

### I.    PROCEDURAL BACKGROUND

This is the same Motion for Partial Summary Judgment that ExxonMobil filed and served in the State court action. Previously, Defendants filed their response to ExxonMobil's Motion in the State court action. ExxonMobil's Motion is ripe and concerns five issues of contract

interpretation that can be decided as a matter of law. ExxonMobil has not modified any of its arguments in any way and has kept the exact same verbiage in this Motion with two exceptions. The first exception is this paragraph and the second exception is deleting two sentences concerning the standard for a motion for summary judgment. May 21, 2012 was the date set for a hearing on ExxonMobil's Motion by the State court. However, because Gensym removed the case just prior to the scheduled hearing, the State court did not have an opportunity to rule on ExxonMobil's Motion.

## II.    INTRODUCTION

Effective April 1, 2008, ExxonMobil and Gensym entered into a License Agreement ("License Agreement"). The purpose of the License Agreement is to "define the terms and conditions for the provision" of G2 software and services by Gensym pursuant to future purchase orders. On or about April 11, 2008, ExxonMobil Research and Engineering Company submitted a purchase order for the purchase of a perpetual license to use G2 software ("G2 Purchase Order"). ExxonMobil paid for the perpetual license and built a sophisticated alert system that uses the G2 software. The alert system was designed based on complex mathematical modeling and engineering and years of study and analysis. ExxonMobil holds multiple patents for this technology and uses the alert system at over thirty different refining and chemical plants around the world. The alert system provides an important line of defense to identify operational deviations, issue advance advisories to ExxonMobil personnel of potential process, equipment and system failures, and recommend corrective actions before operational deviations can develop into more serious problems.

Three years after ExxonMobil Research and Engineering Company paid for an irrevocable, fee-paid, perpetual software license, Gensym/Versata attempted to lock out

ExxonMobil from using the software unless ExxonMobil agreed to (1) increased prices for maintenance contrary to the License Agreement and (2) a wholesale revision of the terms and conditions of the License Agreement, which had premised ExxonMobil Research and Engineering Company's original purchase. Gensym/Versata tried to accomplish this lockout by withholding license keys to the software, license keys that the License Agreement requires Gensym to provide, in perpetuity, on an annual basis. Gensym/Versata similarly refused to provide ExxonMobil with a permanent key, which the License Agreement also requires Gensym to provide.

This Motion for Partial Summary Judgment addresses five issues of contract interpretation. First, pursuant to the terms of the License Agreement and the G2 Purchase Order, ExxonMobil Research and Engineering Company is the "Licensee." Second, pursuant to the terms of the License Agreement and the G2 Purchase Order, ExxonMobil Research and Engineering Company is a "User." Third, pursuant to the terms of the License Agreement and the G2 Purchase Order, Gensym is required to provide ExxonMobil Research and Engineering Company with the ability to distribute annual license codes. Fourth, pursuant to the terms of the License Agreement and the G2 Purchase Order, Gensym is required to generate permanent codes for ExxonMobil Research and Engineering Company. Fifth, each of these statements remains true regardless of whether ExxonMobil purchases maintenance services from Gensym/Versata.

Resolution of these five contract interpretation issues will go a long way toward resolving the entire case. Gensym has taken varying positions with respect to the meaning of the License Agreement. For example, while Gensym denies that ExxonMobil Research and Engineering Company is the Licensee, its witnesses have been unable to identify the actual Licensee. While Gensym's positions have changed as to the meaning of the License Agreement, one aspect has

remained the same: Gensym continues to use its varying positions as excuses for refusing to allow ExxonMobil to use its global perpetual G2 software license.[1] If the Court interprets the plain language of the License Agreement for the parties, Gensym's excuses will disappear and the issues for the trier of fact and the Court will be limited and simplified.

### III.   SUMMARY JUDGMENT EVIDENCE

ExxonMobil relies on the following three pieces of summary judgment evidence:

1. The License Agreement effective April 1, 2008, attached hereto as Exhibit 1.

2. The G2 Purchase Order dated April 11, 2008, attached hereto as Exhibit 2.

3. Gensym's Amended Answer to Interrogatory No. 5 (contending that the License Agreement is not ambiguous), attached hereto as Exhibit 3.

The affidavit of Ryan A. Botkin attesting to these exhibits is also attached as Exhibit 4.

### IV.   ARGUMENT AND AUTHORITIES

"When a contract is unambiguous and the dispositive facts are not in dispute, a court may grant summary judgment and render a declaratory judgment regarding the parties' rights under the contract." *TC Dallas # 1, LP v. Republic Underwriters Ins. Co.*, 316 S.W.3d 832, 837 (Tex.App.—Dallas 2010, no pet.) (citing *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 131–32 (Tex.App.—Corpus Christi 2006, pet. denied). In the present case, the Court is faced with that exact situation. First, as Gensym admits, the contract is unambiguous. Ex. 3, Gensym's Amended Answer to Interrogatory No. 5. Second, there is no dispute about the dispositive facts that (1) the parties entered into the License Agreement and (2) the G2 Purchase Order was submitted pursuant to the License Agreement. Ex. 1, License Agreement; Ex. 2, G2 Purchase Order.

---

[1] After ExxonMobil filed suit, ExxonMobil set a hearing for its request for a temporary injunction. At the September 2011 temporary injunction hearing, Gensym agreed to provide temporary codes to use the G2 software.

The rules of construction for a contract such as the License Agreement are well settled under Texas law. The interpretation of an unambiguous contract is a question of law for the Court to decide. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999). "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (citation omitted). The parties' intent must be derived from the agreement itself, and the agreement must be enforced as written. *Wells Fargo Bank, Minn., N.A. v. N. Cent. Plaza I, L.L.P.*, 194 S.W.3d 723, 726 (Tex.App.—Dallas 2006, pet. denied). Texas courts favor an interpretation that affords some consequences to each part of the agreement so that none of the provisions are rendered meaningless. *Coker*, 650 S.W.2d at 394. In the present case, the intent of the parties, as expressed in the License Agreement, supports the granting of this Motion for Partial Summary Judgment.

## A.    ExxonMobil Is Entitled To Summary Judgment Because ExxonMobil Research And Engineering Company Is The "Licensee" As A Matter Of Law.

The term "Licensee" is defined in the License Agreement. The License Agreement defines "Licensee" to "mean[] any Affiliate or joint venture that issues an Order to Licensor as provided in the Agreement." Ex. 1, License Agreement at 5. Therefore, the Court should look to the G2 Purchase Order to determine which Affiliate or joint venture issued the G2 Purchase Order. The G2 Purchase Order shows that the Order was issued by ExxonMobil Research and Engineering Company. Ex. 2, G2 Purchase Order. ExxonMobil Research and Engineering Company is the research and engineering arm of ExxonMobil that, among other technologies, develops computer systems such as the alert system that is used at the refineries and chemical

plants.[2] ExxonMobil Research and Engineering Company appears at the top of each page of the Purchase Order. *Id.* ExxonMobil Research and Engineering Company is also the company to which the G2 software is to be delivered. *Id.* at 1. Additionally, ExxonMobil Research and Engineering Company is the company to which the invoice is to be sent. *Id.*

Furthermore, The Purchase Order contains express language that parallels the express language in the License Agreement and confirms the fact that ExxonMobil Research and Engineering Company is the Licensee. The Purchase Order, in the box on the first page, identifies "ExxonMobil Global Services Company Procurement on behalf of Purchaser." Ex. 2, G2 Purchase Order at 1. Similarly, the License Agreement contains parallel language in the first sentence of the License Agreement where it states that ExxonMobil Global Services Company is a procurement company that is "acting for the account of Licensee." The company that ExxonMobil Global Services Company is acting on behalf of, in both the Purchase order and the License Agreement, is ExxonMobil Research and Engineering Company, the Licensee.

The License Agreement further confirms that ExxonMobil Research and Engineering Company is the Licensee. As the G2 Purchase Order states, it was placed pursuant to the terms and conditions of the License Agreement. *Id.* at 2. As such, the License Agreement itself contains a provision that expresses the parties' clear intent that ExxonMobil Research and Engineering be a Licensee by identifying ExxonMobil Research and Engineering as an entity that may place purchase orders. Ex. 1, License Agreement at Exhibit C ("ExxonMobil Research and Engineering ("EMRE") may issue purchase orders."). Significantly, ExxonMobil Research and Engineering is the only ExxonMobil entity that is specifically named in this provision.

---

[2]    In addition, this engineering organization provides leadership in applying technology and services that implement best practices, including capital projects, refinery optimization and energy-efficiency systems.

Finally, there is no provision in the License Agreement or the G2 Purchase Order stating that ExxonMobil Research and Engineering Company is not the "Licensee" or identifying any other person as the "Licensee." Therefore, ExxonMobil Research and Engineering Company is the "Licensee" pursuant to the terms of the License Agreement for the G2 Purchase Order.

**B.    ExxonMobil Is Entitled To Summary Judgment Because ExxonMobil Research And Engineering Company Is a "User" As A Matter Of Law.**

The term "User" is also defined in the License Agreement and includes ExxonMobil Research and Engineering Company. A "User" is defined as "[s]ubject to the qualifications on usage set forth in 3.3(d), User means any person who is enabled to be in actual Use of the product running on a computer, whether that person is a stand-alone User or a network User." Ex. 1, License Agreement at 6.

Pursuant to the License Grant contained in Clause 3.1, ExxonMobil Research and Engineering Company, as the Licensee, is authorized to use the G2 software:

> **License Grant**. Unless otherwise expressly stated herein, upon acceptance of an Order and receipt of the applicable license fee, **Licensor grants to Licensee a perpetual,** transferable (but only as expressly set forth in Section 3.4(a)), non-exclusive, worldwide, **fee paid license to Use the Product**, and any optional features included in such Order, subject to any limitations or restrictions regarding the Product set forth herein.

*Id.* at Clause 3.1 (emphasis in orig. and added). This express statement that the Licensee has a license to use the G2 software standing alone shows the parties' intent that ExxonMobil Research and Engineering Company is a "User." There is even more evidence of the parties' intent. The Declaration of License at Exhibit I to the License Agreement also states that the Licensee, its affiliates, and joint ventures have been granted full and legal rights to use the G2 software by Gensym:

> The recipient of this Declaration of License may rely upon the assertions contained herein that **the Licensee, its affiliates, joint ventures** included as an affiliate herein, and its employees and users of any software or product provided

7

by Licensor **have been granted full and legal rights to use such software or product by Licensor;**

*Id.* at Exhibit I – "Declaration of License" (emphasis added).

Finally, there is no provision in the License Agreement or the G2 Purchase Order stating that ExxonMobil Research and Engineering Company is not a "User." Therefore, ExxonMobil Research and Engineering Company is a "User" pursuant to the terms of the License Agreement for this G2 Purchase Order.

**C.    ExxonMobil Is Entitled To Summary Judgment Because Gensym Is Required To Provide ExxonMobil Research And Engineering Company With Permanent And Annual License Codes As A Matter Of Law.**

The express language of the License Agreement reflects the requirement that Gensym provide ExxonMobil with permanent and annual license codes. The license codes are indispensable to the use of the G2 software. Without the license codes, the G2 software will not run when the computer is started or "booted up." Because these license codes are necessary to use the G2 software, the express terms of the License Agreement explicitly require Gensym to provide annual and permanent codes:

> **Code Generation**:  Gensym will provide EMRE with the ability to distribute annual license codes for the G2 Development Bundle defined in Section 2 above. Permanent codes will be generated by Gensym.

Ex. 1, License Agreement at Ex. C – "Description of products and Services." This express statement of Gensym's obligation to provide the license codes should end the inquiry as to the parties' intent.

There is additional evidence of the parties' intent that Gensym provide the license codes. The License Agreement expressly states that the Product purchased by ExxonMobil includes the license codes. "Product" is defined to include the license codes necessary to use the G2 software:

> **"Product"** shall include the media containing the software and any software or hardware components, **including license files, keys, dongles or other security devices that are necessary to use, operate or access the software,** computer program(s) and/or data described in Exhibit C.

License Agreement at Exhibit A (Definitions), ¶ 24 (emphasis added). By purchasing the Product (the G2 software), ExxonMobil Research and Engineering Company purchased the license codes that are necessary to use the G2 software. Therefore, pursuant to the G2 Purchase Order and the License Agreement, Gensym was obligated to provide the license codes that are part of the purchased Product.

Because the license codes were part of the purchased Product, Gensym represented that there were no other access codes that would inhibit ExxonMobil's use of the product. The following is one of Gensym's warranties and representations:

> (e) except to the extent otherwise disclosed to licensor by Licensee, the Products will perform without the need for the Licensee or any User to obtain access codes, keywords or devices from Licensor, and no security, lockout or timing devices exist that would inhibit the Use of the Product.

*Id.* at Clause 8.1(e). The fact that the License Agreement required Gensym to provide annual and permanent codes makes sense because the license is perpetual and, without the license codes, the G2 software is useless. Therefore, ExxonMobil requests that the Court hold that, under the License Agreement, Gensym is required to provide ExxonMobil Research and Engineering Company with permanent and annual license codes for the G2 Software purchased pursuant to the G2 Purchase Order.

**D.     ExxonMobil Is Entitled To Summary Judgment Because Neither ExxonMobil Research and Engineering Company's Status As License And User, Nor Gensym's Obligation To Provide Permanent And Annual License Codes Is Conditioned On ExxonMobil Purchasing Maintenance Services.**

Gensym has taken the position that Gensym is not obligated to provide ExxonMobil with the codes necessary to use the G2 software and ExxonMobil Research and Engineering

Company's status as Licensee and User is nullified unless ExxonMobil is paying for maintenance. However, there is no contractual support for Gensym's position:

- There is no provision in the License Agreement that nullifies ExxonMobil Research and Engineering Company's status as Licensee and User if ExxonMobil is not paying for maintenance services. *See* Ex. 1, License Agreement.
- There is no provision in the G2 Purchase Order that nullifies ExxonMobil Research and Engineering Company's status as Licensee and User if ExxonMobil is not paying for maintenance services. *See* Ex. 2, G2 Purchase Order.
- There is no provision in the License Agreement that conditions the provision of the license codes on ExxonMobil paying for maintenance. *See* Ex. 1, License Agreement.
- There is no provision in the G2 Purchase Order that conditions the provision of the license codes on ExxonMobil paying for maintenance. *See* Ex. 2, G2 Purchase Order.

Furthermore, Exhibit C, which includes express language requiring Gensym to provide the license codes, does not condition the provision of the codes on ExxonMobil paying for maintenance. Nor is there any provision in the G2 Purchase Order that conditions the provision of the license codes on ExxonMobil paying for maintenance. *See* Ex. 2, G2 Purchase Order.

Contrary to Gensym's position, the License Agreement expressly states that maintenance is optional, at ExxonMobil's "sole option and discretion." Ex. 1 at Ex. B, Clause 6.6. Clause 6.6 is titled "Support Optional" and states:

> Licensee may elect, at its sole option and discretion, to obtain or discontinue Maintenance Services from Licensor at any time.

*Id.* The License Agreement further provides that "Product fees include one initial year of Maintenance Services, and annual renewal of Maintenance Services is optional thereafter." *Id.,* at Ex. B, Clause 6.1. Therefore, ExxonMobil is not required to purchase maintenance. Importantly, none of these provisions state that, if ExxonMobil decides not to purchase maintenance, Gensym is relieved of its obligation to provide the permanent and annual license codes.

In the past Gensym has pointed to a pricing box in Exhibit D for its claim that Gensym is relieved of its obligation to provide license codes if ExxonMobil chooses not to purchase maintenance. Exhibit D is entitled "Compensation and Payment" and the boxes in Exhibit D show the pricing for various products. The box that Gensym points to is the following:

| Use of Gensym Products by EMRE | Use of G2 Development bundles, telewindows and other Gensym products for the development and support of site applications of G2 | Provided free to the EMRE G2 development and support group as long as a) the Corporate License is purchased and b) EMRE's CSS is current. Limited to those products that have been purchased by XOM. |
|---|---|---|

*Id.* at Exhibit D – "Compensation and Payment," Row 4. Gensym is wrong for several reasons.[3]

First, and most plainly, the box does not address Gensym's obligation to provide the license codes. *Id.* Nor does any language in the box state that Gensym is relieved of its obligation to provide the license codes if ExxonMobil chooses not to purchase maintenance. *Id.*

Second, the License Agreement expressly states that "any Licensor's Documents expressly included in the Agreement as part of Exhibit D shall be used for the **sole purpose of establishing prices**." *Id.*, at Ex. B, Clause 1.8 (emphasis added). Limiting the use of Exhibit D to a price list makes sense because it is a price list and is titled "Compensation and Payment."

Third, Clause 24.2 of the License Agreement makes clear that the detailed provisions in the License Agreement itself, which are contained in Exhibit B, trump and control over any inconsistent provisions in the other exhibits:

> **Agreement Precedence.** In the event of a conflict between any provisions of the Agreement, the terms in this Exhibit B shall take precedence and govern over the terms of the other Exhibits.

---

[3]    While pointing to this box, Gensym conveniently ignores the pricing provisions that actually apply to the purchase and appear two lines above this box, which describes in great detail the products that also appear on the Purchase Order.

11

*Id.,* at Ex. B, Clause 24.2 (emphasis in orig.).  Thus, Gensym's contorted interpretation of a pricing provision in Exhibit D does not trump the unambiguous contractual obligations ExxonMobil has cited.

Fourth, Gensym's position is contrary to the express terms of the License Agreement and would improperly render those provisions meaningless.  For example, the Declaration of License at Exhibit I to the License Agreement declares that the Licensee has "been granted full and legal rights to use such software or product by [Gensym]." *Id.* at Exhibit I – "Declaration of License". Gensym's interpretation of the pricing Box in Exhibit D is contrary to this statement of the rights of the License (ExxonMobil research and Engineering Company) and would render the Declaration of License meaningless.  *See Coker*, 650 S.W.2d at 394.  Therefore, Gensym's position is incorrect.

Fifth, Gensym's position ignores and does not address any of the provisions in Exhibit B which uniformly establish that (i) ExxonMobil has a perpetual license to use the G2 platform and any necessary keys and codes, (ii) maintenance services by Gensym are entirely optional and can be discontinued at any time, and (iii) Gensym is prohibited from using any lockout or timing device that interferes with ExxonMobil's use of the Product.  Somehow, according to Gensym's unsupportable position, these express provisions are rendered meaningless because, if ExxonMobil, in its sole discretion, determines to stop payment for maintenance, it will not be entitled to license codes.  This does not make any sense, because, without the license codes, ExxonMobil cannot use the Product and its perpetual license, as well as the above cited provision, are rendered meaningless and of no value.  Put simply, Exhibit D does not relieve Gensym of its obligation to provide the license codes if ExxonMobil chooses not to purchase maintenance.

12

## V.    CONCLUSION

For these reasons, ExxonMobil respectfully requests that the Court enter an order granting ExxonMobil's Motion for Partial Summary Judgment and for such other relief as it may be entitled.

Respectfully Submitted,

Shannon H. Ratliff
Texas Bar No. 16573000
Michael L. Navarre
Texas Bar No. 00792711
RATLIFF LAW FIRM, P.L.L.C.
600 Congress Avenue, Suite 3100
Austin, Texas  78701
(512) 493-9600
(512) 493-9625 (facsimile)

Andrew A. Kassof, P.C.  (pro hac vice)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654-3406
(312) 862-2000
(312) 862-2200 (facsimile)

ATTORNEYS FOR PLAINTIFFS
EXXONMOBIL GLOBAL SERVICES
COMPANY, EXXON MOBIL
CORPORATION, AND EXXONMOBIL
RESEARCH AND ENGINEERING
COMPANY

## CERTIFICATE OF SERVICE

I certify that on this the 6th day of June, 2012, I served a true and correct copy of the foregoing instrument on the following via facsimile or hand delivery:

Amir H. Alavi - Facsimile
Ahmad, Zavitsanos & Anaipakos, P.C.
1221 McKinney, Suite 3460
Houston, Texas 77010

Thomas H. Watkins – Hand Delivery
Brown McCarroll
111 Congress Avenue, Suite 1400,
Austin, Texas  78701-4093

Michael L. Navarre

14