UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **EXXONMOBIL GLOBAL SERVICES CO., EXXONMOBIL CORP., and EXXONMOBIL RESEARCH & ENGINEERING CO.,** *Plaintiffs/Counter-Defendants*, | § § § § § § § | |
| v. | § § | **CASE NO. 1:12-CV-442-JDR** |
| **GENSYM CORP. & VERSATA ENTERPRISES, INC.,** *Defendants*, | § § § § | |
| **GENSYM CORP.,** *Counter Plaintiff/Third-Party Plaintiff*, | § § § § | |
| v. | § § § | |
| **INTELLIGENT LABORATORY SOLUTIONS, INC.,** *Third-Party Defendant*. | § § § § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant/Counter Plaintiff/Third Party Plaintiff Gensym Corporation ("Gensym") and Defendant Versata Enterprises, Inc.'s ("Versata") Motion to Dismiss ExxonMobil's Alter Ego Theory (Dkt No. 61), whereby Gensym and Versata move to dismiss Plaintiffs/Counter Defendants ExxonMobil Global Services Company, Exxon Mobil Corporation, and ExxonMobil Research and Engineering Company's (collectively "ExxonMobil") joint liability alter ego theory as found in ExxonMobil's Fourth Amended Complaint.

**I. Factual and Procedural Background**

This complex case arises in part from a breach of contract dispute, whereby ExxonMobil seeks to hold Gensym's parent corporation, Versata, jointly liable for alleged violations of a

License Agreement signed by Gensym through an alter ego theory. Only those facts relevant to ExxonMobil's alter ego theory are discussed below.

According to the facts set forth in ExxonMobil's Fourth Amended Complaint (Compl., Dkt. No. 57), in 2007, ExxonMobil and Gensym entered into negotiations for a single license agreement for Gensym's G2 Software Platform to replace previous ad hoc, site-specific agreements between Gensym and various ExxonMobil entities. Effective April 1, 2008, ExxonMobil and Gensym entered into a License Agreement, the purpose of which was to "define the terms and conditions for the provision" of products and services by Gensym pursuant to future purchase orders. (The "License Agreement", Dkt. No. 11, Ex. 1 at 3, art. 1.) On or about April 11, 2008, ExxonMobil submitted a purchase order for a "corporate wide perpetual license for G2 XOM development bundle." (The "G2 Purchase Order," Dkt. No. 11, Ex. 2.) According to ExxonMobil, three years after granting ExxonMobil an irrevocable, fee-paid, perpetual software license that is by its own terms "unlimited," Gensym/Versata attempted to prevent ExxonMobil from using the G2 Software Platform unless ExxonMobil agreed to a wholesale revision of the License Agreement. Gensym/Versata tried to accomplish this lockout by withholding access codes necessary to utilize the G2 Software Platform—keys that the License Agreement required Gensym/Versata to provide ExxonMobil.

On August 29, 2011, ExxonMobil filed its Original Petition in the 419th Judicial District Court of Travis County, Texas alleging breach of contract and seeking declaratory relief in connection with the License Agreement, as well as injunctive relief requiring Gensym to provide ExxonMobil with permanent access codes to use the G2 Software Platform. On November 2, 2011, ExxonMobil amended its Petition, adding causes of action for fraudulent inducement and breach of warranty, both relating to the License Agreement. ExxonMobil again amended its

Petition on January 31, 2012, making minor changes and adding Defendant Versata under an alter ego theory. After Gensym filed counterclaims against ExxonMobil under the federal Copyright Act, Gensym removed the action to this Court on May 17, 2012. On October 10, 2012, ExxonMobil filed its Third and Fourth Amended Complaints, whereby ExxonMobil withdrew its fraudulent inducement claims.

Gensym and Versata now move to dismiss ExxonMobil's joint liability/ alter ego theory pursuant to FED. R. CIV. P. 12(b)(6) for failing to plead fraud or injustice in the use of the corporate form.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in her favor. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *United States v. Gaubert*, 499 U.S. 315, 327 (1991). A court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citing *St. Paul Ins. Co. of Bellaire, Texas v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991)).

Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737–38 (S.D. Tex. 1998). While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the Supreme Court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (abrogating the *Conley v. Gibson*, 355 U.S. 41 (1957) 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations omitted). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.*; *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

## III. Analysis

Under Texas choice-of-law rules, shareholder liability for corporate debts, pursuant to a veil-piercing or alter ego theory, is determined by the law of the state in which the corporation was incorporated. *Weaver v. Kellogg*, 216 B.R. 563, 585 (S.D. Tex. 1997) (citing *Alberto v. Diversified Group, Inc.*, 55 F.3d 201, 203 (5th Cir. 1995)). Gensym and Versata are both Delaware corporations. (Compl. ¶¶ 8, 9.) Accordingly, Delaware substantive law controls the alter ego issue.

Under Delaware law, "'[Disregard of the corporate entity] may be done only in the interest of justice, where such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation . . . are involved.'" *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *11 (Del. Ch. Jul. 14, 2008) (citing *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968)) (alteration in *Sprint*).

In order to sufficiently allege alter ego liability, a plaintiff must set forth specific facts showing that, "in all aspects of the business, the [ ] corporations actually functioned as a single entity and should be treated as such." *Blair v. Infineon Tech. AG*, 720 F. Supp. 2d 462, 470 (D. Del. 2010) (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001)) (alteration in *Blain*). "Some factors a court may consider when being asked to disregard the

corporate form include: '(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder.'" *Sprint Nextel*, 2008 WL 2737409 at *11 (quoting *U.S. Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls, LLC*, 2005 WL 2093694, *1 (Del. Ch. Mar. 30, 2005)). "While the list of factors is not exhaustive and no single factor is dispositive, some combination is required, and an overall element of fraud, injustice, or unfairness must always be present." *Blair*, 720 F. Supp. 2d at 471 (citations omitted). Finally, the plaintiff must set forth specific facts showing how the corporate form was used to perpetrate the fraud. *Mobil Oil v. Linear Films*, 718 F. Supp. 260, 269 (Dist. Del Jun. 27, 1989) ("The law requires that fraud or injustice be found in the defendants' use of the corporate form."); (*Wallace ex rel. Cencorn Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) ("Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice.").

In support of its alter ego theory, ExxonMobil alleges as follows:

63. Gensym has been operated as a mere tool or business conduit of Versata. Versata is the sole or part-owner of Gensym. Gensym has no employees and its Board of Directors consists of a single Versata employee, with the possibility that Cushman, a contractor of Versata (not Gensym), may also be a member of the Board of Directors. Versata employees and contractors conduct all business for Gensym. On information and belief, Versata controls Gensym so that holding Gensym solely liable would result in an injustice.

64. Versata has used the corporate form to evade the legal obligations of Gensym pursuant to the terms of the License Agreement. There is such unity between Versata and Gensym that the corporation has ceased to be a separate entity.

65. Versata has committed an actual fraud against ExxonMobil.

66. Versata is liable to ExxonMobil for Gensym's conduct and Gensym's obligations pursuant to the terms of the License Agreement.

(Compl. ¶¶ 63–66.)

Gensym and Versata move to dismiss ExxonMobil's alter ego theory on the grounds that ExxonMobil's Fourth Amended Complaint: (1) fails to plead sufficient facts to support the basic lack of corporate separateness required to pierce the corporate veil, (2) fails to describe what "fraud and injustice" has been done to it, and (3) fails to properly plead that Gensym's corporate form was used to perpetrate the fraud or other injustice.

With respect to ExxonMobil's allegations regarding the lack of corporate separateness, ExxonMobil claims that Versata is the sole or part-owner of Gensym and that Versata controls Gensym. ExxonMobil further alleges that Gensym has no employees; instead, Gensym's board of directors is made up of people who are employees or contractors of Versata, and all of Gensym's business is done by people who are employees or contractors of Versata. ExxonMobil does not allege that Gensym was inadequately capitalized for the undertaking or insolvent, that corporate formalities were not observed, or that Versata siphoned company funds.

"Mere dominion and control of the parent over the subsidiary will not support alter ego liability." *Outokumpu Eng'g Enters., Inc. v. Kvaerner Enviropower*, 685 A.2d 724, 729 (Del. Super. Ct. 1996) (citing *Mobil Oil*, 718 F. Supp. at 262). Likewise, allegations that the corporation and its parent share employees, without more, are insufficient to justify piercing the corporate veil. *EBG Holdings LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, *1 (Del. Ch. Sept. 2, 2008) (refusing to pierce corporate veil despite allegations that wholly-owned subsidiary had no employees or officers of its own and that the parent company served as the subsidiary's managing director, where plaintiff had not shown that the parent company's "use of the corporate form for its [] subsidiary constituted 'a sham and exist[ed] for no other purpose than as a vehicle for fraud'"). Finally, even if ExxonMobil's conclusory allegation that "Gensym

has been operated as a mere tool or business conduit of Versata" (Compl. ¶ 63) were sufficient to constitute disregard of the corporate form, ExxonMobil must set forth facts sufficient to identify fraud in the use of the corporate form. *See Mobil Oil Corp.*, 718 F. Supp. at 262; *EBG Holdings*, 2008 WL 4057745 at *1.

Although ExxonMobil alleges that "Versata has committed an actual fraud against ExxonMobil" (Compl. ¶ 65), its Complaint sets forth no facts explaining what conduct on Gensym and/or Versata's part was fraudulent. Likewise, while ExxonMobil alleges that Versata "used the corporate form to evade the legal obligations of Gensym pursuant to the terms of the License Agreement" (*Id.* ¶ 64), ExxonMobil does not identify what Gensym and/or Versata did, beyond allegedly breaching the License Agreement, that constitutes fraud. In order to support alter ego liability, "[t]he 'injustice' must be more than the breach of contract alleged in the complaint." *Outokumpu Eng'g*, 685 A.2d at 729 (citing *Mobil*, 718 F. Supp. at 268).

Because ExxonMobil's Fourth Amended Complaint fails to identify the "actual fraud" committed by Gensym/Versata, fails to specify how this is different from the underlying breach-of-contract allegation in the lawsuit, fails to state how Gensym/Versata's bad acts involve the corporate form, and fails to state how ExxonMobil was defrauded or otherwise harmed by Gensym/Versata's misuse of the corporate form, the Court finds that ExxonMobil's allegations against Versata are insufficient to support an alter ego theory of liability.

## IV. Conclusion

For the aforementioned reasons, Genysm and Versata's Motion to Dismiss ExxonMobil's Alter Ego Theory (Dkt No. 61) is **GRANTED**. However, because the Court is of the opinion that ExxonMobil could state a claim for relief against Versata under a joint liability alter ego theory,

ExxonMobil is granted leave to amend its complaint no later than 14 days after entry of this Order, or this claim will be dismissed with prejudice.

It is so **ORDERED**.

**SIGNED** this 28th day of March, 2013.


_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE