**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **EXXONMOBIL GLOBAL SERVICES COMPANY, EXXONMOBIL CORPORATION, AND EXXONMOBIL RESEARCH AND ENGINEERING COMPANY,** | § § § § § | |
| *Plaintiffs/Counter-Defendants* | § § | |
| **v.** | § § | |
| **GENSYM CORPORATION and VERSATA ENTERPRISES, INC.,** | § § | CASE NO. 1:12-CV-00442-JDR |
| *Defendants,* | § § | |
| **GENSYM CORPORATION** | § | |
| *Counter Plaintiff/Third-Party Plaintiff* | § § | |
| **v.** | § § | |
| **INTELLIGENT LABORATORY SOLUTIONS, INC.** | § § § | |
| *Third-Party Defendant* | § | |

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
**CONCERNING GENSYM'S FAILURE TO PROVIDE ACCESS CODES**

Plaintiffs ExxonMobil Global Services Company, Exxon Mobil Corporation, and ExxonMobil Research and Engineering Company ("EMRE"), (collectively, "ExxonMobil"), file this Motion For Partial Summary Judgment Concerning Gensym's Failure To Provide Access Codes against Defendants Gensym Corporation ("Gensym") and Versata Enterprises, Inc. ("Versata") and in support thereof would respectfully show the Court as follows:

**I.    PROCEDURAL BACKGROUND**

On March 26, 2013, the Court granted ExxonMobil's Motion for Partial Summary Judgment as to five issues of contract construction of the 2008 License Agreement.  In its Order, the Court ruled that Gensym is required to provide ExxonMobil with access codes "regardless of

whether ExxonMobil purchases maintenance services from Gensym." [Dkt. 78] By its Order, the Court rejected Gensym's then stated reason (that ExxonMobil was not on maintenance) for its admitted failure and refusal to provide ExxonMobil with access codes to use the G2 platform.

Gensym has now presented the Court with a new reason for its failure in its response to ExxonMobil's Motion for Partial Summary Judgment on the contract interpretation issues. Although raised in its response, Gensym's new reason was not an issue before the Court in deciding the contract construction issues in ExxonMobil's prior motion. Contrary to its earlier statements to the state court and the sworn testimony of its witnesses, Gensym now claims that it provided ExxonMobil with a permanent access code for use with the 2008 License Agreement. This Motion refutes Gensym's new position and seeks a ruling that Gensym breached its contract with ExxonMobil by refusing and failing to provide access codes to ExxonMobil.

## II.   FACTUAL SUMMARY

Prior to 2008, ExxonMobil and Gensym had entered into numerous agreements dating back to the 1980s whereby ExxonMobil licensed G2 software. G2 is a computer software platform that is used to build computer applications. These agreements were for single machine or site specific licenses. In 2007, Gensym and ExxonMobil discussed the possibility of a corporate-wide license. Effective April 1, 2008, ExxonMobil and Gensym entered into a corporate-wide License Agreement ("2008 License Agreement"). Pursuant to the 2008 License Agreement, ExxonMobil Research and Engineering Company submitted a purchase order and purchased a perpetual corporate-wide license to use G2 for it and ExxonMobil's affiliates.

ExxonMobil built a sophisticated alert system that uses the G2 platform called "Abnormal Event Detection and Real-Time Advisory" ("AED/RTA"). ExxonMobil uses AED/RTA at over thirty refining and chemical plants around the world. AED/RTA provides an

important line of defense to identify issues and recommend corrective actions before operational deviations can develop into more serious problems.  AED/RTA was designed to run exclusively on the G2 platform.  Like other systems built on the G2 platform, AED/RTA will not work without G2.  Likewise, G2 will not work without an access code.  In 2008, 2009, and 2010, Gensym supplied ExxonMobil with the required temporary access codes.

In 2011, as Gensym has admitted, Gensym/Versata decided that it no longer wanted to perform its obligations under the 2008 License Agreement.  The 2008 License Agreement included a schedule for the price of maintenance that was tied to the consumer price index.  Instead, Gensym/Versata implemented a new maintenance program with higher prices that was contrary to the terms of the 2008 License Agreement.  In addition to the higher prices, the new maintenance program amounted to a wholesale revision of the maintenance terms and conditions of the 2008 License Agreement.  ExxonMobil did not agree to the new maintenance program.

In an attempt to force ExxonMobil to agree to the new maintenance program with increased prices, Gensym refused to provide new access codes.  Gensym knew that without the access codes, the G2 platform, as well as ExxonMobil's AED/RTA system, would not work and would be worthless.  Prior to the filing of this lawsuit, Gensym/Versata never provided ExxonMobil with a permanent access code for use under the 2008 License Agreement.  This fact was confirmed by Gensym/Versata's witnesses in their sworn testimony and by Gensym's statements to the state court.

The temporary access code that Gensym provided in 2010 was set to expire in October 2011.  As that deadline approached and Gensym continued to refuse to provide access codes, ExxonMobil made the decision to file this lawsuit to obtain the required access codes.  As a result of this lawsuit and to avoid a hearing on ExxonMobil's request for a temporary injunction

to require Gensym to provide the codes, Gensym agreed for a certain time period to provide temporary access codes but insisted on certain restrictions. After ExxonMobil filed its motion for partial summary judgment concerning contract interpretation in state court, things changed. In a reversal of its prior arguments and positions, Gensym/Versata generated a permanent key and sent it to ExxonMobil for use with the 2008 License Agreement.[1] However, by that time the damage had been done. ExxonMobil had made the decision to leave the G2 software platform due to Gensym/Versata's withholding of access codes, attempting to force ExxonMobil to agree to increased rates and new terms and conditions, and demonstrated unreliability.

Now, in a complete reversal of its position, Gensym claims that, in 2007, it somehow provided ExxonMobil a permanent access code for use with the 2008 License Agreement. Gensym's new position is an issue that was not before the Court in ExxonMobil's prior motion for partial motion summary judgment on the contract interpretation issues. As the summary judgment evidence will show, this new claim is unavailing. The 2007 access code was provided (1) prior to the execution of the 2008 License Agreement; (2) prior to ExxonMobil's purchase of the G2 platform pursuant to the 2008 License Agreement; (3) pursuant to a separate prior license agreement; (4) to one specific site with instructions that the key could not be used elsewhere; (5) prior to the installation of AED/RTA at that site; and (6) not for use with the 2008 License Agreement.

### III.    SUMMARY JUDGMENT EVIDENCE

The facts necessary to support ExxonMobil's request for a partial summary judgment are contained in the following:

---

[1]  Subsequently, Gensym/Versata refused to agree that ExxonMobil could use the permanent access code and the G2 software without exposing ExxonMobil to potential claims by Gensym/Versata. See *infra* Parts V.B.3 – 4. Shortly thereafter, Gensym/Versata filed its counterclaims and sought a declaration that ExxonMobil not be allowed to use the G2 software.

Exhibit 1      License Agreement effective April 1, 2008

Exhibit 2      G2 Purchase Order dated April 11, 2008

Exhibit 3      Nirav Mehta email dated 5/14/2008 with License Distribution Process

Exhibit 4      Excerpts from the Deposition of Paul Lindenfelzer

Exhibit 5      Excerpts from the Deposition of Peter deWit

Exhibit 6      Email dated 7/13/2011 with Gensym/Versata PowerPoint Presentation

Exhibit 7      Internal Gensym/Versata Email dated 6/10/2011

Exhibit 8      Excerpts from the Deposition of Davin Cushman

Exhibit 9      Email chain between ExxonMobil and Gensym/Versata from 6/6/11 to 6/13/2011

Exhibit 10     Email chain between ExxonMobil and Gensym/Versata from 7/13/11 to 7/15/2011

Exhibit 11     Letter from ExxonMobil to Gensym/Versata dated 8/1/2011

Exhibit 12     Letter from Gensym/Versata to ExxonMobil dated 8/23/11

Exhibit 13     Excerpts from the Deposition of Andrew Price

Exhibit 14     Agreed Order Granting Plaintiffs' Verified Application for Temporary Restraining Order

Exhibit 15     Excerpts from Gensym's Response to ExxonMobil's Application for Injunctive Relief

Exhibit 16     04/26/07 email with Permanent Access Code

Exhibit 17     Master End-User Software License Agreement (88-06-48)

Exhibit 18     Excerpts from the Deposition of Michael Kurtz

Exhibit 19     Affidavit of John Thurtell

The affidavit of Michael L. Navarre attesting to these exhibits is also attached as Exhibit 20.

## IV.    STANDARD OF REVIEW

A motion for summary judgment shall be granted if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment

as a matter of law." Fed.R.Civ.P. 56(c); *Hall v. Thomas*, 190 F.3d 693, 695 (5th Cir. 1999).  In considering a motion for summary judgment, the Court construes factual controversies in the light most favorable to the nonmovant, "but only if both parties have introduced evidence showing that an actual controversy exists." *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.,* 140 F.3d 622, 625 (5th Cir. 1998) (citation omitted).  "We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Id.*

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted).  To meet its burden, the nonmoving party must present "significant probative" evidence indicating that there is a triable issue of fact.  *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994).  If the evidence rebutting the summary judgment motion is only colorable or not significantly probative, summary judgment should be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Here, there is no genuine issue of material fact because, as its witnesses have admitted, Gensym failed and refused to provide the access codes.

### V.     ARGUMENT AND AUTHORITIES

"The elements of breach of contract in Texas are: (1) the existence of a valid contract [between the parties]; (2) that plaintiff performed or tendered performance; (3) that defendant breached the contract; and (4) that plaintiff was damaged as a result of the breach." *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 455 (5th Cir. 2003).  Here, there is no dispute that the 2008 License Agreement is a valid contract and that ExxonMobil paid for the corporate-

wide perpetual license that it purchased pursuant to that contract.  Ex. 1, 2008 License Agreement; Ex. 2, April 11, 2008 G2 Purchase Order.

Nor should there be any dispute that Gensym failed and refused to provide ExxonMobil with access codes in 2011 until ExxonMobil filed this lawsuit.  Gensym admitted this fact in its response to ExxonMobil's first Motion for Partial Summary Judgment.  In 2011, Gensym's stated reason for failing and refusing to provide ExxonMobil with access codes was its claim that it was not obligated to provide access codes if ExxonMobil was not on maintenance.  This Court rejected that reason, when it granted ExxonMobil's first Motion for Partial Summary Judgment. [Dkt. 78]

ExxonMobil will prove that Gensym/Versata failed and refused to provide access codes in 2011 as part of its stated plan to "force" ExxonMobil to agree to increased maintenance prices and new terms and conditions. ExxonMobil will also prove that Gensym's new position – that Gensym provided ExxonMobil with a permanent access code in 2007 that ExxonMobil could use under the 2008 License Agreement – has no basis.  Finally, ExxonMobil will show that there is no genuine issue of material fact with respect to whether ExxonMobil has been damaged. ExxonMobil does not intend to prove at this time all of the types and amounts of damage it suffered and seek a judgment as to the amount of damages; rather ExxonMobil intends to prove that it has been damaged to satisfy the fourth element of its breach of contract cause of action.

**A.**    **There Is No Genuine Issue Of Material Fact Because Gensym Breached The 2008 License Agreement By Failing And Refusing To Provide Access Codes.**

   **1.**    **As the Court ruled, Gensym is required to provide ExxonMobil with access codes "regardless of whether ExxonMobil purchases maintenance services from Gensym."**

Previously, the parties briefed the question of whether Gensym is required to provide ExxonMobil with temporary and permanent access codes and whether this requirement exists

7

even if ExxonMobil is not on maintenance.  The Court agreed with ExxonMobil and ruled that

Gensym is required to provide the access codes "regardless of whether ExxonMobil purchases

maintenance services from Gensym."  Memorandum and Order at 13 [Dkt. 78].  The Court

further ruled that if Gensym had "opted in the past to provide EMRE with temporary annual

access codes," Gensym was consequently "required to do so on a yearly basis, indefinitely."

> **The Court finds that Gensym is required to provide EMRE with whatever access codes are necessary to allow ExxonMobil to use the G2 Software Platform** that it purchased pursuant to the License Agreement and G2 Purchase Order.  **To the extent Gensym opted in the past to provide EMRE with temporary annual access codes in lieu of one permanent access code, the License Agreement required Gensym to do so on a yearly basis, indefinitely**. Whether Gensym actually provided ExxonMobil with a working permanent access code before this lawsuit was filed remains an issue of fact for a jury to decide.

*Id.* (emphasis added).

As envisaged by the Court, Gensym had opted in the past to provide EMRE with

temporary annual license codes.  Shortly after the parties executed the 2008 License Agreement,

the parties put in place a process for the annual distribution of temporary access codes:

## Gensym-ExxonMobil Corporate License Distribution Process

**Specific Process**

1. Gensym (Addy) generates Site (non-machine ID dependent) g2.ok file for the G2-XOM GSP. The codes should start on April 1st 2008 and should end on October 1st 2009. – New codes should be generated each February.
2. Gensym (Addy) puts the G2 image on and external ftp site and sends the access information to EMRE (Nirav).  Authorization (for extraction) should be included if necessary to be able to extract the components needed for the above package.
3. XOM (Nirav) downloads the image from the ftp and tests the authorization and g2.ok files to ensure that they are correct. Confirmation is sent back to Gensym (Addy, Paul, Jenn).
4. Nirav installs the image on the customer site and applies the same corporate (Site) g2.ok file to it.
5. Customer verifies that installation works.

Ex. 3, Email from Nirav Mehta dated 5/14/2008 with License Distribution Process at EMGV000029995; Ex. 4, Depo. of Paul Lindenfelzer at 179:11-22; 181:7-18 (testimony by Gensym witness that this was the agreed upon distribution process that he thought he had drafted). In 2008, 2009, and 2010, Gensym opted to provide temporary annual access codes in lieu of a permanent access code. Therefore, Gensym was required to provide EMRE with temporary access codes on an annual basis.

> **2.    In 2011, Gensym/Versata decided that Gensym would not comply with the 2008 License Agreement and Gensym would "force" ExxonMobil to agree to increased rates and new terms and conditions for maintenance.**

Pursuant to the terms of the 2008 License Agreement, Gensym was prohibited from increasing the price for maintenance by more than the corresponding increase in the Consumer Price Index. Ex. 1, 2008 License Agreement at Ex. D. In 2011, along with new terms and conditions, Gensym demanded that ExxonMobil pay as much as 300% more for maintenance than the 2008 License Agreement allowed. ExxonMobil did not agree to the new terms and conditions or to pay the increased rates that violated the terms of the 2008 License Agreement. On many occasions, ExxonMobil informed Gensym/Versata that it wanted to stay on maintenance at the same rate and terms set forth in the 2008 License Agreement. Ex. 5, Depo. of Peter deWit at 113:22 – 114:1.

Eventually, Gensym/Versata admitted that it had made the business decision not to comply with the 2008 License Agreement. One example is the PowerPoint Presentation that Gensym/Versata made to ExxonMobil on July 13, 2011, Ex. 6, Email dated 7/13/2011 with Gensym/Versata PowerPoint Presentation at GYN000951. During that meeting, Gensym/Versata admitted that it had decided not to perform its obligations under the terms of the 2008 License Agreement and presented a slide that said:

*Id.* As Gensym/Versata stated, in an internal email, its goal was to "force" ExxonMobil to agree to its new maintenance program with higher rates and new terms and conditions:[2]

We understand we force you to our new program.

Ex. 7, Internal Gensym/Versata Email dated 6/10/2011 at GYN002362 (Gensym/Versata stated that "We understand [that] we force [ExxonMobil] to our new program.").

> **3.** **In 2011, Gensym breached the 2008 License Agreement by refusing and failing to provide ExxonMobil with new access codes as part of its plan to force ExxonMobil to agree to increased rates and new terms and conditions for maintenance.**

Gensym/Versata knew that the eighteen month temporary access codes that they had provided in 2010 were set to expire on October 1, 2011. Pursuant to the agreed procedure, Gensym was required to generate the temporary access codes in February 2011 with a start date of April 2011 and an end date of October 2012. Ex. 3, Email from Nirav Mehta dated 5/14/2008 with License Distribution Process at EMGV000029995. Without new access codes, Gensym/Versata knew that ExxonMobil would be locked out of the G2 platform, as well as its AED/RTA system that had cost millions to develop and install around the world. Gensym/Versata decided to withhold the new codes to force ExxonMobil to agree to the

---

[2]  ExxonMobil's experience with Versata's practice of trying to force its customers to pay higher rates for a "new" maintenance program or version of software is not the only example confronted by federal courts. In a similar case, one of Versata's other subsidiaries tried to force an insurance company to buy "new" software. When the insurance company refused to do so, Versata took the position that the insurance company was required to pay maintenance fees to continue to use its older software. The insurance company disagreed because it, like ExxonMobil, had acquired a perpetual license. The federal court agreed with the insurance company. *See* No. 5:12-CV-111-BO, *North Carolina Farm Bureau Mut. Ins. Co., Inc. v. Clear Technology, Inc. and Versata Enterprises, Inc.*, 2013 WL 5278020 (E.D. N.C. Sept. 13, 2013) (Boyle, T.) (slip copy) (granting motion for summary judgment in favor of licensor, North Carolina Farm Bureau Insurance Company).

increased rates and new terms and conditions.  Gensym/Versata told ExxonMobil that it would only provide new access codes if ExxonMobil agreed to the new maintenance program.  Ex. 8, Depo. of Davin Cushman at 122:12 – 124:18.

There are numerous other examples of Gensym/Versata refusing and failing to provide the required access codes unless ExxonMobil paid for maintenance at the increased rates with the new terms and conditions.  Below are a few examples:

- Pursuant to the agreed distribution process, Gensym/Versata failed to provide the temporary access codes prior to the expiration of maintenance on April 1, 2011.

- On June 6, 2011, ExxonMobil requested that "[l]icense keys should be delivered to EM as soon as possible to prevent any kind of business disruption."  Ex. 9, Email chain between ExxonMobil and Gensym/Versata from 6/6/11 to 6/13/2011 at EMGV000032963.

- On June 6, 2011, Gensym/Versata refused ExxonMobil's request and stated that "[a]ny of these requests [for access codes] can only be honored when there is a support agreement in place since this is seen [by Gensym/Versata] as a support activity."  *Id.* at EMGV000032962.

- On June 9, 2011, ExxonMobil again requested new access codes and further explained the urgency of the situation:

  At this point, and as already mentioned, EM expects that the license keys issue is solved as soon as possible to avoid any further disruptions, and since per the terms of the agreement between the parties the license is perpetual and its usage should not be prevented by a situation like this. As discussed during the call, it's clear that the process of handling this matter has not been the best, and EM has been left with very little time to deal with the situation.

  *Id.*  at EMGV000032959.

- On June 13, 2011, Gensym/Versata again refused to provide access codes unless "ExxonMobil [was] confirmed on [one] of our new support plans":

  Regarding the License Provision for your JV in Saudi Arabia: We continue to see license provision as a support activity.  As I understand you will want to move that forward with that at a

  very short notice, we are making preparations to do so as soon as we have ExxonMobil confirmed on our of our new support plans.

  *Id.* at EMGV000032958-959.

11

- On July 15, 2013, after repeated requests by ExxonMobil for new access codes, Gensym/Versata again refused to provide new access codes unless ExxonMobil agreed to the new maintenance program:

> Leonardo, Layi, and John, I want to let you know that we will be happy to take action on all support requests including the license key generation issue as soon as we have you confirmed as active on our of our support programs.

Ex. 10, Email chain between ExxonMobil and Gensym/Versata from 7/13/11 to 7/15/2011.

- On August 1, 2011, with the existing access keys about to expire, ExxonMobil requested permanent access codes. Ex. 11, Letter from ExxonMobil to Gensym/Versata dated 8/1/2011. In this correspondence, as with some of the prior correspondence, ExxonMobil explained that Gensym/Versata's position that ExxonMobil had to agree to be on the new maintenance program with increased rates to receive new access codes was contrary to the 2008 License Agreement. *Id.*

- On August 23, 2011, Gensym/Versata refused to provide the access codes. Gensym/Versata even went so far as to claim that (1) EMRE could not use G2 because it was not paying for maintenance (or CSS) and (2) ExxonMobil's request for the access codes was "unjust and inconsistent with the terms of the [2008 License] Agreement."

> However, actual "Use" of the Products (including the provision to provide annual codes to EMRE), requires EMRE to be current on CSS. To date, EMRE is not current on CSS, and therefore, will not have actual "Use" of the G2 Development Bundles as limited by the restrictions stated in the Agreement.

> Licensee's continued demands for Licensor to provide permanent codes to EMRE is unjust and inconsistent with the terms of the Agreement.

Ex. 12, Letter from Gensym/Versata to ExxonMobil dated 8/23/2011 at EMGV00000079.

These documents show that Gensym breached the terms of the 2008 License Agreement by failing and refusing to provide the access codes that are required to run G2 and AED/RTA.

In addition to the above documentary evidence, Gensym/Versata's witnesses admit that Gensym/Versata refused to provide ExxonMobil with access codes. Ex. 13, Depo. of Andrew Price at 41:13 – 23; 133:13 – 24; 134:19 – 135:3. Peter deWit also testified that Gensym had refused to provide ExxonMobil with a permanent access code. Ex. 5, Depo. of Peter deWit at 92:8 – 17. Because Gensym/Versata refused to provide the required access codes, ExxonMobil

filed this lawsuit.  In fact, just one day after the lawsuit was filed, Gensym/Versata agreed to provide temporary access codes.  Ex. 14, Agreed Order Granting Plaintiffs' Verified Application for Temporary Restraining Order.

**B.    Contrary To Gensym/Versata's New Story, Gensym Never Provided ExxonMobil With A Permanent Access Code For Use Under The 2008 License Agreement Before This Lawsuit Was Filed.**

> **1.    As Gensym told the state court, Gensym never provided ExxonMobil with a permanent access code before this lawsuit was filed.**

Gensym's new claim is contrary to its prior statements to the state court.  Shortly after ExxonMobil filed this lawsuit, a temporary injunction hearing was held on ExxonMobil's request for an access code so that its G2 platform and AED/RTA would continue to work.  While opposing ExxonMobil's request for an access code, Gensym told the state court that it never provided ExxonMobil with a permanent access code:

> The actual status quo, and also the only remedy to which ExxonMobil would could [sic] be entitled, would be **temporary access** codes to the G2 System, **which is all ExxonMobil has ever had, and is also what it has now**.

Ex. 15, Excerpts from Gensym's Response to ExxonMobil's Application for Injunctive Relief at 4 (emphasis added).

> **2.    As Gensym/Versata's witnesses testified, Gensym never provided ExxonMobil with a permanent key under the 2008 License Agreement before this lawsuit was filed.**

Similarly, the sworn testimony of Gensym/Versata's witnesses contradicts its new position.  For example, Davin Cushman, Gensym's contract CEO, testified that Gensym did not provide ExxonMobil with a permanent code.  Ex. 8, Depo. of Davin Cushman at 104:7 – 11. Previously, Mr. Cushman worked for Trilogy, the predecessor to Versata, from 1996 to 2004. *Id.* at 64:9 – 11.  Mr. Cushman became Gensym's contract CEO in 2011.  Prior to his deposition, Mr. Cushman researched whether Gensym had provided a permanent access code to

ExxonMobil under the 2008 License Agreement.  *Id*. at 104:12 – 105:5.  His research confirmed that Gensym did not provide ExxonMobil with a permanent access code under the 2008 License Agreement.  *Id.* at 105:6 – 7.

Paul Lindenfelzer also testified that he "didn't know" whether Gensym ever issued ExxonMobil a permanent access code under the 2008 License Agreement.  Ex. 4, Depo. of Paul Lindenfelzer at 130:12 – 20.   Mr. Lindenfelzer was the main point of contact between ExxonMobil and Gensym concerning the 2008 License Agreement.   He does not have an "explicit memory" or even a "fuzzy memory" of Gensym providing ExxonMobil with a permanent code under the 2008 License Agreement.  *Id.* at 131:9 – 131:20.  Mr. Lindenfelzer testified that even if Gensym had provided ExxonMobil with such a code, it only would have been a machine-specific code that could only have been used by one computer, as opposed to a universal access code.  *Id.* at 130:16 – 131:8; 131:21 – 25.  Mr. Lindenfelzer finally admitted that he didn't think a universal permanent access code had been provided under the 2008 license Agreement.  *Id.*  at 516:21 – 517:13.

### 3.    Gensym/Versata bases its claim on a 2007 permanent access code that was sent a year prior to the execution of the 2008 License Agreement.

In its Response to ExxonMobil's first Motion for Partial Summary Judgment, Gensym/Versata claimed that it had provided ExxonMobil with a permanent access code for use with the 2008 License Agreement.  Gensym/Versata's new claim is based on an access code that was created on April 26, 2007 that is attached hereto as Exhibit 16.   However, this 2007 permanent access code was not provided under the 2008 License Agreement.  Ex. 16, April 26, 2007 email with Permanent Access Code at EMGV000026754 (code shows that it is for license "88-06-48-48").

14

When Gensym/Versata submitted this 2007 permanent access code as part of its response to ExxonMobil's prior motion for partial summary judgment, Gensym/Versata did not provide the Court with the email that was used to send the code. *Id.* In fact, the transmittal email and the code itself confirm that the code was not issued pursuant to the 2008 License Agreement:

- The access code was created and provided on April 26, 2007, a full year before the 2008 License Agreement was executed and the order for the G2 platform was placed. *Id.* Therefore, the permanent access code could not have been issued pursuant to the 2008 License Agreement.

- The access code was provided on April 26, 2007, prior to the installation of AED/RTA at the Baton Rouge site.

- The access code specifically references license agreement "88-06-48" in the "machine-id" line. *Id.* at EMGV000026754. That license agreement was executed in 1995 and is a license that is used at Baton Rouge. Ex. 17, 88-06-48 Master End-User Software License Agreement.

- In contrast, "A2124520" is the designation of the 2008 License Agreement. *See* Ex. 1, 2008 License Agreement.

- The email chain shows that the 2007 access code was being requested by ExxonMobil's Baton Rouge facility for use at that facility. Ex. 16, April 26, 2007 Letter with Permanent Access Code at EMGV000026747; EMGV000026750.

- Michael Kurtz and Sean Kittle, the two ExxonMobil employees in this email chain, worked at ExxonMobil's Baton Rouge facility. *Id.*

Furthermore, there is nothing in this email that indicates that ExxonMobil could use the 2007 permanent Baton Rouge access code for the 2008 corporate-wide perpetual license that ExxonMobil would not purchase for another year. In fact, Michael Kurtz testified that he was told by Gensym that he could not allow a permanent code to be used anywhere else. Ex. 18, Depo. of Michael Kurtz at 79:5 – 79:18.

**C.    ExxonMobil Has Been Damaged By Gensym's Breach Of The 2008 License Agreement.**

ExxonMobil suffered damages as a result of Gensym's breach of the 2008 License Agreement. As a result of Gensym's conduct, ExxonMobil made the decision to move its AED/RTA system off of the G2 platform. Ex. 19, Affidavit of John Thurtell. This was caused

by Gensym/Versata's withholding of the access keys, attempting to force ExxonMobil to agree to increased rates and new terms and conditions, and demonstrated unreliability. *Id.* Moving the AED/RTA system off of the G2 platform is costing millions of dollars and makes some of ExxonMobil's previous expenditures worthless. *Id.* Furthermore, ExxonMobil was forced to file this lawsuit to obtain new access codes. *Id.* The following is a list of some of the damages that ExxonMobil has suffered as a result of Gensym's breach of the 2008 License Agreement by refusing and failing to provide access codes:

- The cost of initial development of AED/RTA with the G2 platform.
- The cost of initial deployment of AED/RTA with the G2 platform.
- The cost to develop AED/RTA on a new platform.
- The cost to install AED/RTA on a new platform.
- The cost to file this lawsuit to obtain new access codes to replace the codes that were set to expire on October 1, 2011.

Therefore, there is no issue concerning the fact that ExxonMobil has been damaged.

## VI.    CONCLUSION

For these reasons, ExxonMobil respectfully requests that the Court enter an order granting ExxonMobil's Motion for Partial Summary Judgment and for such other relief as it may be entitled.

Respectfully Submitted,


/s/ Michael L. Navarre

Shannon H. Ratliff
Texas Bar No. 16573000
Michael L. Navarre
Texas Bar No. 00792711
RATLIFF LAW FIRM, P.L.L.C.
600 Congress Avenue, Suite 3100
Austin, Texas  78701
(512) 493-9600
(512) 493-9625 (facsimile)

Andrew A. Kassof, P.C.  (pro hac vice)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654-3406
(312) 862-2000
(312) 862-2200 (facsimile)

ATTORNEYS FOR PLAINTIFFS
EXXONMOBIL GLOBAL SERVICES
COMPANY, EXXON MOBIL
CORPORATION, AND EXXONMOBIL
RESEARCH AND ENGINEERING
COMPANY


## CERTIFICATE OF SERVICE

I certify that on this the 1st day of October, 2013, I served a true and correct copy of the foregoing instrument on the following via facsimile or hand delivery:

Amir H. Alavi - Facsimile                    Thomas H. Watkins – Hand Delivery
Ahmad, Zavitsanos & Anaipakos, P.C.          Brown McCarroll
1221 McKinney, Suite 3460                     111 Congress Avenue, Suite 1400,
Houston, Texas 77010                          Austin, Texas  78701-4093


/s/ Michael L. Navarre

Michael L. Navarre

17