UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EXXONMOBIL GLOBAL SERVICES CO., EXXON MOBIL CORP., and EXXONMOBIL RESEARCH & ENGINEERING CO., *Plaintiffs/Counter-Defendants*, | § § § § § § § § § | |
| v. | § § | |
| GENSYM CORP. & VERSATA ENTERPRISES, INC., *Defendants*, | § § § § § | CASE NO. 1:12-CV-442-JDR |
| GENSYM CORP., *Counter Plaintiff/Third-Party Plaintiff* | § § § § | |
| v. | § § § | |
| INTELLIGENT LABORATORY SOLUTIONS, INC., *Third-Party Defendant* | § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs ExxonMobil Global Services Company, Exxon Mobil Corporation, and ExxonMobil Research and Engineering Company's (collectively "ExxonMobil") Motion for Partial Summary Judgment Concerning Gensym's Failure to Provide Access Codes (Dkt. No. 85), to which Gensym Corporation ("Gensym") and Versata Enterprises, Inc. ("Versata") (collectively "Gensym") have responded (Dkt. No. 92) and ExxonMobil has replied (Dkt. No. 95).

### I. Factual and Procedural Background

This breach of contract action involves a computer software license agreement entered into between ExxonMobil and Gensym in 2008 ("2008 License Agreement", Dkt. No. 85, Ex. 1),

as well as a purchase order for a "corporate wide perpetual license for G2 [ExxonMobil] development bundle" that ExxonMobil Research and Engineering Company (EMRE)[1] submitted to Gensym pursuant to the License Agreement ("G2 Purchase Order," *Id.*, Ex. 2). The facts giving rise to this action are set forth at length in the Court's March 26, 2013 Memorandum Opinion & Order (Dkt. No. 78), which granted partial summary judgment in favor of ExxonMobil as to several issues of contract construction of the 2008 License Agreement. *ExxonMobil Research & Engineering Co. v. Gensym Corp.*, 2013 WL 1293772 (W.D. Tex. Mar. 26, 2013).

The Court previously found that "Gensym is required to provide [ExxonMobil] with whatever access codes are necessary to allow ExxonMobil to use the G2 Software Platform, . . . regardless of whether ExxonMobil purchases maintenance services from Gensym." *ExxonMobil*, 2013 WL 1293772 at *8. The Court further recognized that its findings did "not resolve the disputed issue of . . . whether Gensym actually provided ExxonMobil with a working permanent access code before this lawsuit." *Id.* ExxonMobil now moves for partial summary judgment on the limited issue of whether Gensym breached the 2008 License Agreement by refusing and failing to provide access codes necessary to allow ExxonMobil to use the G2 Software Platform.

## II. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, Ltd. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent

---

[1]. EMRE is the branch of ExxonMobil responsible for distributing software, providing support, and performing development of new applications with respect to the G2 Software Platform.

summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "[T]he court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Freeman v. U.S.*, 2005 WL 3132185, *2 (S.D. Tex. Nov. 22, 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

### III. Objections to Summary Judgment Evidence

As a preliminary matter, the Court will address specific evidentiary objections Gensym has lodged with respect to ExxonMobil's summary judgment evidence.

Gensym first objects to statements ExxonMobil cites on page 41 of Andrew Price's Deposition Transcript (Dkt. No. 85, Ex. 13) on the grounds that the statements contain hearsay. *See* FED. R. EVID. 801. This objection is sustained.

Gensym further objects to the statement "contrary to the explicit terms of the license agreement" in Paragraph 7 of John Thurtell's Affidavit (Dkt. No. 85, Ex. 19) on the grounds that it states a legal conclusion. *See* FED. R. EVID. 602. This objection is sustained.

Gensym also objects to statements in Paragraph 8 of Mr. Thurtell's Affidavit on the grounds that statements purportedly made by Gensym and ExxonMobil are hearsay. *See* FED. R. EVID. 801. This objection is overruled.

Gensym further objects to Paragraph 10 of Mr. Thurtell's Affidavit on the grounds that it consists "entirely" of conclusory statements that lack any foundation. *See* FED. R. EVID. 602. Although portions of this paragraph are conclusory, the Court does not find that it is "entirely" so. To the extent the Court has regarded portions of this paragraph as relevant, admissible, and necessary to the resolution of particular summary judgment issues, it hereby overrules this objection.

Finally, Gensym complains that Mr. Thurtell is not qualified as an expert to testify regarding damages suffered or causation. *See* FED. R. EVID. 702. ExxonMobil's motion for summary judgment is limited to the issue of breach and does not address damages or causation. Gensym's objection is therefore overruled as moot.

## IV. Discussion

### A. Breach of Contract Standard

The elements of a breach of contract claim under Texas law are: (1) there is a valid and enforceable contract; (2) the plaintiff is a proper party to sue for breach of the contract; (3) the plaintiff performed, tendered performance, or was excused from performing its contractual obligations; (4) the defendant breached the contract; and (5) the defendant's breach caused the plaintiff's injury. *Winchek v. Am. Express Travel Related Servs.*, 232 S.W.3d 197, 202 (Tex. App.–Houston [1st Dist] 2007, no pet.); *Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 713 (Tex. App. –Corpus Christi 2006, pet denied); *Hackberry Creek Country Club, Inc., v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 55 (Tex. App.–Dallas 2006, pet. denied). "Breach" is the failure, without legal excuse, to perform any promise that forms all or part of an agreement. *Bernal v. Garrison*, 818 S.W.2d 79, 83 (Tex. App.–Corpus Christi, 1991 writ denied.)

### B. Analysis

There is no dispute that the 2008 License Agreement is a valid contract between Gensym and ExxonMobil. There is also no dispute that ExxonMobil performed it contractual obligations when it paid for the corporate-wide perpetual license that it purchased pursuant to the contract. At issue here is whether Gensym breached the 2008 License Agreement by refusing to provide access codes necessary to allow ExxonMobil to use the G2 Software Platform.

ExxonMobil claims that Gensym breached the provision at Exhibit C to the 2008 License Agreement entitled "Description of Products and Services," which provides that "Gensym will provide EMRE with the ability to distribute annual license codes for the G2 Development Bundle defined in Section 2 above. Permanent codes will be generated by Gensym." (2008 License Agreement at 20.) ExxonMobil further cites Exhibit A of the 2008 License Agreement,

5

which defines a "product" purchased pursuant to the 2008 License Agreement as including "license files, keys, dongles[,] or other security devices that are necessary to use, operate[,] or access the software, computer program(s)[,] and/or data described in Exhibit C." (*Id.* at 6, ¶ 24.)

ExxonMobil has offered evidence that, shortly after the Parties executed the 2008 License Agreement, they put in place a process for the annual distribution of access codes whereby each February, Gensym would general annual access codes for ExxonMobil that would start on April 1 of the current year and end on October 1 of the following year. (Gensym-ExxonMobil Corporate License Distribution Process, Dkt. No. 85, Ex. 3 at 10–11; Lindenfelzer Dep., *Id.* Ex. 4 at 179:11-22, 181:7-18.) There is no dispute that in 2008, 2009, and 2010, Gensym opted to provide annual access codes to ExxonMobil. There is also no dispute that Gensym did not provide ExxonMobil with annual access codes in 2011 until after ExxonMobil filed this lawsuit. Instead, as set forth below, Gensym repeatedly told ExxonMobil that it would only provide new access codes if ExxonMobil agreed to purchase maintenance services.

According to an email chain between ExxonMobil and Gensym employees spanning several days in June 2011, on June 6, 2011, ExxonMobil requested that "[l]icense keys should be delivered to [ExxonMobil] as soon as possible to prevent any kind of business disruption." (ExxonMobil and Gensym 6/6/2011-6/13/2011 Email Chain, Dkt. No 85, Ex. 9 at 6.) However, Gensym refused ExxonMobil's request and stated that any requests for access codes could "only be honored when there is a support agreement in place since this is seen as a support activity." (*Id.* at 5.) On June 9, 2011, ExxonMobil again requested new access codes, explaining that the codes were necessary "to avoid any further disruptions" and that it had "been left with very little time to deal with the situation." (*Id.* at 2.) On June 12, 2011, Gensym responded that it would provide the access codes as soon as ExxonMobil was confirmed on one of Gensym's new

support plans. (*Id.* at 1–2.) In another email chain between ExxonMobil and Gensym in July 2011, Gensym again refused to provide new access codes until ExxonMobil was "confirmed as active on one on [Gensym's] support programs." (ExxonMobil and Gensym 7/13/11–7/15/2011 Email Chain, *Id.*, Ex. 10 at 1.) In anticipation of the annual codes expiring, on August 1, 2011, ExxonMobil sent a written demand letter to Gensym requesting permanent—as opposed to temporary—access codes. (ExxonMobil 8/1/2011 Letter to Gensym, Dkt. No. 85, Ex. 11.) Gensym responded by letter dated August 23, 2011, again refusing to provide any access codes. (Gensym 8/23/2011 Letter to ExxonMobil, *Id.*, Ex. 12 at 1.) Gensym further stated that ExxonMobil's request for access codes was "unjust and inconsistent with the terms of the [2008 License] Agreement" and that ExxonMobil was not authorized to use the G2 Software Platform at all unless it purchased maintenance from Gensym (*Id.* at 2.) As a result, on August 29, 2011, ExxonMobil filed its Original Petition in the 419th Judicial District of Travis County, Texas alleging breach of contract and seeking declaratory relief in connection with the 2008 License Agreement as well as injunctive relief requiring Gensym to provide ExxonMobil with a permanent access code to use the G2 Software Platform.

Gensym initially took the position that it had never provided ExxonMobil with a permanent access code under the 2008 License Agreement. During a hearing on ExxonMobil's request for an injunction ordering Gensym to provide ExxonMobil with a permanent access code, Gensym told the state court that "temporary access codes to the G2 System . . . is all ExxonMobil has ever had, and is also what it has now." (Gensym Resp. to ExxonMobil App. for Inj. Relief, Dkt. No. 85, Ex. 15 at 2.) Davin Cushman, Gensym's contract CEO, also previously testified that Gensym did not provide ExxonMobil with a permanent access code for the G2

7

Software Platform under the 2008 License Agreement. (Cushman Dep., Dkt. No. 85, Ex. 8 at 104:7–105:7.)

Gensym now argues that it did not breach its obligation to provide access codes under the 2008 License Agreement because ExxonMobil has had a permanent access code in its possession since 2007. Gensym explains that ExxonMobil had been using the G2 Platform under a series of agreements predating the 2008 License Agreement, and in 2007, Gensym provided ExxonMobil with a permanent, non-expiring access code that could be used to start the G2 Software Platform on an unlimited number of computers (the "2007 Code"). (de Wit Decl., Dkt. Ni. 92, Ex. 2, ¶¶ 3, 4; O'Connor Dep., *Id.*, Ex. 16 at 95:9-11; Mehta Dep., *Id.*, Ex. 8 at 60:7-11; Thurtell Dep., *Id.*, Ex. 4 at 25:14-20.) At some point in 2011, ExxonMobil became aware that it had the 2007 Code in its possession; however, on advice of counsel, ExxonMobil decided that it would not test the code or ask Gensym whether it could be used. (Thurtell Dep. at 26:19-23, 32:3-7, 35:3-19, 37:5-24; O'Connor Dep. at 99:1-6, 100:5-12; Mehta Dep. at 64:21-24.) Instead, ExxonMobil chose to unnecessarily file this lawsuit.

ExxonMobil argues that this claim is unavailing because the 2007 Code was provided: (1) before the execution of the 2008 License Agreement; (2) before ExxonMobil's purchase of the G2 Software Platform pursuant to the 2008 License Agreement; (3) pursuant to a separate prior license agreement; (4) to one specific site with instructions that the access code could not be used elsewhere; and (5) not for use with the 2008 License Agreement. The Court agrees.

The summary judgment evidence shows that in 2007, ExxonMobil's Baton Rouge facility requested a code for use at that facility. (4/26/2007 Email Chain, Dkt. No. 85, Ex. 16 at 2.) The 2007 Code, which Gensym provided in response to this request, specifically references license agreement 88-06-48, as opposed to A2124520, which is the designation of the 2008 License

8

Agreement (*Cf.* Email with Permanent Access Code, *Id.* at 9; 88-06-48 Master End-User Software License Agreement, *Id.*, Ex. 17 at 1; 2008 License Agreement at 1.) Michael Kurtz, the Baton Rouge Employee who received the 2007 Code, testified that he was told by Gensym that he could not allow this code to be use anywhere outside the Baton Rouge facility (Kurtz Dep., Dkt. No. 95, Ex. 18 at 79:5-18), and there is no evidence that anyone at Gensym ever told ExxonMobil that it was authorized to use the 2007 Code with the G2 Software Platform it purchased pursuant to the 2008 License Agreement.

Gensym claims that ExxonMobil should have nonetheless asked Gensym's permission to use the 2007 Code after Gensym refused to provide the annual access codes in 2011. The Court finds this assertion to be disingenuous and in direct contradiction to positions taken by Gensym during this litigation. For example, in response to Interrogatory No. 6, Gensym stated that ExxonMobil has "no right" to use any access codes that turn on the PROTOCOLS and GDA modules—which the 2007 Code does. (Gensym Ans. to Interrog. No. 6, Dkt. No. 95, Ex. 1 at 2.) Gensym has also repeatedly taken the position that ExxonMobil is not entitled to use the G2 Software Platform *at all* unless it pays Gensym for maintenance services. (*E.g.*, Gensym 8/23/2011 Letter to ExxonMobil at 2; Gensym 9/8/2011 Letter to ExxonMobil, Dkt. No. 21, Ex. 4 at 1.)

Based on the aforementioned evidence, the Court finds that ExxonMobil was not legally authorized to use the 2007 Code under the 2008 License Agreement. As such, Gensym did not fulfill its obligation to provide ExxonMobil with whatever access codes are necessary to use the G2 Software Platform by providing the 2007 Code.

Gensym further argues that, notwithstanding the 2007 Code, ExxonMobil has always had the access codes necessary to use, operate, and/or access the G2 Software Platform. Gensym

states that the temporary annual access codes in ExxonMobil's possession at the time ExxonMobil filed this lawsuit in August 2011 were not set to expire until October 2011, and Gensym has provided ExxonMobil with additional temporary access codes since the inception of this lawsuit. (9/13/2011 Hr'g on Appl. for Temp. Inj., Dkt. No. 92, Ex. 13 at 79:1–80:18. Moreover, on January 28, 2013, Gensym and ExxonMobil agreed via stipulation that ExxonMobil could use the 2007 Code. (Stipulation, *Id.*, Ex. 19.) Thus, Gensym maintains that it did not breach its obligation to provide access codes under the 2008 License Agreement, even if it did provide some of the codes under protest.

In Texas, a defendant may be liable for anticipatory breach of contract where the plaintiff can show: (1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party. *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004) (citing *Taylor Publ'g Co. v. Sys. Mktg. Inc.*, 686 S.W.2d 213, 217 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)). As set forth *supra*, throughout 2011, Gensym repeatedly repudiated its obligation to provide annual access codes under the 2008 License Agreement. Gensym attempted to use ExxonMobil's failure to purchase maintenance services as an excuse to justify its repudiation; however, as the Court previously ruled, "Gensym is required to provide EMRE with whatever access codes are necessary to allow ExxonMobil to use the G2 Software Platform, . . . regardless of whether ExxonMobil purchases maintenance services from Gensym." *ExxonMobil*, 2013 WL 1293772 at *8. Based on Gensym's repudiation of its obligations under the contract, ExxonMobil was required to file this lawsuit and seek injunctive relief in order to force Gensym to provide new access codes before its current codes expired in October 2011. The fact that Gensym eventually agreed to provide the necessary access codes after this lawsuit was filed does not excuse its anticipatory breach of the 2008 License Agreement.

10

Finally, Gensym argues that summary judgment is improper on ExxonMobil's breach of contract claim because ExxonMobil cannot establish that it experienced any damages, and none of the categories of damages alleged by ExxonMobil are recognized as contract damages under Texas law. Because ExxonMobil has moved for summary judgment only on the issue of breach, and Gensym has not filed its own motion for summary judgment, the Court will not address the issues of causation or damages at this time.

## V. Conclusion

The Court finds that Gensym failed, without legal excuse, to perform its obligation under the 2008 License Agreement to provide ExxonMobil with whatever access codes are necessary to use the G2 Software Platform. Accordingly, ExxonMobil's Motion for Partial Summary Judgment Concerning Gensym's Failure to Provide Access Codes (Dkt. No. 85) is **GRANTED**.

It is so **ORDERED**.

**SIGNED** this 17th day of September, 2014.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE